May it please the Court, I am Joel Grose with my co-counsel Ford El Cesar, counsel for Appellant Plaintiff Safe Air for Everyone, and I would like to try to reserve five minutes for rebuttal. The issue in this case is whether the district court misconstrued Section 7002 of RCRA. Section 7002 is an extremely important and powerful provision which allows citizens to come into federal court to protect their own health from the dangerous waste handling and disposal practices of third parties. We submit that the district court in this case narrowly and incorrectly interpreted Section 7002 in a manner which was inconsistent with the language of the statute and with the intent of the statute as being one to protect public health. In doing so, the court declined to even consider the voluminous record before it on the motion for preliminary injunction, evidence from citizens, from physicians, from the medical community generally, from leading scientists, from government officials, demonstrating the very grievous health effects that take place every summer from the burning of grass residue by the defendants and growers in this case. I don't think it's entirely accurate to say that the court refused to consider that evidence. At least as I read the court's opinion, what the district court said was that he determined that there was not solid waste being discarded or disposed of. And so he didn't think the act applied. So he would never get to the health issues. That's absolutely correct, Your Honor. And what I was meaning to say is no, if this, if burning the residue is not the disposal or treatment of solid waste, then we're not in a position to assess danger to the public, are we? That's correct. Because what is the scope of RCRA? That's correct as well. And what I meant to say was that as a result of the court making that legal decision, we don't disagree that it was then appropriate for him not to consider the evidence, but the effect of that decision was that the evidence of health effect was not considered. We know that there's evidence of health problems submitted. The district court acknowledged that. Yes. The only issue I think that we can address is whether this is a potential or actual hazard that's addressed by RCRA or whether the appellants have to find some other legislative or statutory remedy outside of RCRA. That's absolutely correct, Your Honor. And I want to devote my argument to why we think the court misinterpreted RCRA in finding that this was not a situation that could be addressed by RCRA. Can I ask you just one preliminary question before you get to the heart of your argument? What do you understand the procedural posture of this case to be? That is to say, you file the complaint for relief, and then you file the motion for a preliminary injunction. The defendants file the motion to dismiss. He dismissed it for lack of jurisdiction. Yes. So did he rule on the motion to dismiss? Did he rule? Did he – what's the – what are we reviewing, in other words? Yes. Is it a summary judgment? No, no. That's – let me address that. The court – It's kind of a unique way in which he presided here. And even if you conduct an evidentiary hearing on a preliminary injunction like this, you make it clear that you're granting the motion to dismiss. You're determining that there's no possible set of facts that could be proved in order to establish you have relief. He said there's no jurisdiction. There probably is subject matter jurisdiction, but he determined that on the facts alleged that you weren't entitled to any relief. Yes. Well, it's compounded by the fact that there's some – in terms of how we review this, and I tend to look at it as a jurisdictional motion to dismiss where the court made findings based on evidence that you submitted in the course of a preliminary injunction proceeding, that if – I have a problem with treating it as a summary judgment because the preliminary injunction proceeding never closed. You didn't finish presenting your evidence. So what are we reviewing here, whether, just as a matter of law, you've stated a claim based on these facts, which are – I think are largely undisputed, actually, but which he found he – it does make some findings of fact. So let me address the procedural posture by first briefly reviewing what happened and then presenting our view of what is appropriately before the Court. We filed a complaint, SAIF did, in the motion of preliminary injunction with a few days thereafter. The Court scheduled a preliminary injunction motion. In advance of that, the defendants moved to dismiss. The Court took up the motion to dismiss as part of the closing argument on the motion for preliminary injunction. We did complete the record for the motion for preliminary injunction. Kagan. Did you complete it? Yes, Your Honor. Okay. And at that point, the Court entered a decision dismissing the case in which the Court did make reference to some of the testimony which was presented at the preliminary injunction hearing. We think that the Court erred as a procedural matter in several respects. One, in viewing this issue as jurisdictional, because the issue – the complaint had alleged all of the elements of a RIC were Section 7002 claim. And as a case, as we cited, State, when you have an element of a Federal claim, to call the issue whether this is solid waste or not jurisdictional would be the same as calling whether there is an endangerment to public health jurisdictional, whether any of the other elements were met. The claim – the elements were all alleged. There certainly was basis for alleging them. And the issue was then, are we able to establish the facts to substantiate those claims? So we think the Court erred, first, in doing it as a jurisdictional issue. And second – If you have a fact that is essential to both jurisdiction and to a claim, and the Court finds that that fact doesn't exist, can't the Court dismiss under Rule 12b-1? I realize that the Court has to either assume the facts that are alleged by the claimant or, if there's an evidentiary hearing, make findings that dispose of the fact issue. But here the Court basically held a trial on the injunction for three days. And I thought, reading his opinion, that he was basically making a finding that while the scope of benefits and need for burning residue might be disputed somewhat, that there was no factual dispute that there was some value to the farming operation as part of the growth process to burn the residue as part of that cycle. Well, I would submit two things. One, that the more appropriate way, when there are allegations made as a basis for the elements of a Federal claim, would be to view it as part of the claim itself. But moving beyond that point, even if you – we would submit that the Court determined disputed issues of fact in ways that were adverse to – What's a material issue of fact that you contend the Court determined without making a finding? Because the Court had a hearing. Yes. You saw witnesses. They were cross-examined. There were a lot of witnesses. And then I thought the Court said that whatever the dispute overall, that there was no dispute about this having value for the farming operation. Yes. Based on that factual determination, as I understood him, then he made his legal ruling that this wasn't a disposal or treatment of a solid waste. In addressing it, let me make two points. First, while the hearing and the procedure that was provided here was, we don't dispute appropriate for a motion for preliminary injunction, it was something done at the beginning of the case with essentially little discovery, a day or two of depositions, no document production, and in a very abbreviated timeframe where there were many witnesses in a couple of days who were cross-examined for a few minutes each. So procedurally, I don't think that substitutes for trial on the merits. But to answer Your Honor's question – He didn't announce at the beginning of the proceeding that he was going to treat it as a trial on the merits, did he? He did not. But to answer Your Honor's question, we submitted – our view is that the – certainly there is – while there certainly is value in the burning, our view, and we think that evidence overwhelmingly supports it, is that the value in the burning comes from almost entirely the need to get rid of the residue. That's why they burn. And there's no question that any disposal – whenever someone disposes of waste, I mean, their reason is not because they have a particular enjoyment of disposing of waste. There's some benefit to what they're doing. If someone is disposing of sludge that accumulates in machinery in an industrial plant, they're disposing of it because they want the facility to operate better. Here, we asserted, and we think the evidence supports this, that essentially the only reason, except for some very minor incidental benefits that the growers burn, is to get rid of the residue. If they don't get rid of it, the grass does not grow, the seeds do not grow, and the following year, burning – You rejected that argument. Excuse me? You rejected that argument. And we would review that at a minimum for clear error, wouldn't we? I would – this is on – I would submit on a motion to dismiss, on a motion which certainly is no higher than a motion for summary judgment. I don't know about that. You know, the Sun Valley case, I recognize it wasn't discussing RCRA. It was talking about the Petroleum Marketing Practices Act, but we were – it's quite analogous. There, the ability to allege a claim that came within the definitional reach of the PNPA was a merit that went – also went to the merits of the action. And similarly here, it would seem that you don't have a claim – you don't have a challenge under RCRA to disposal of solid waste unless there's solid waste. And the Court – we went on to say that jurisdictional dismissals in cases premised on federal question jurisdiction are exceptional unless satisfied the requirements in Bell v. Hood. And ultimately, what we're saying is that we transform it into a determination on the merits. So I guess the problem is that it was – it began as a motion to dismiss for failure to state a claim, but due to the evidence and the findings, it became a dismissal on the merits for failure to come within the definitional reach of these important concepts. Again, we would submit that having alleged – having alleged the elements of the claim, that unless you view the entire – all of the issues in the case as jurisdictional or it's not jurisdictional, we'd also submit that the standard of review by this Court would be de novo. But even if the standard of review by this Court was correct. But de novo goes to law. It doesn't go to facts. No, it does go to – it does go. We submit that it goes – it very much goes to law. Is that the fact-finding? What's that? You're submitting that we're supposed to be conducting the fact-finding? No. We think that the Court implied the wrong standard in determining whether or not something is a solid waste. The Court, first of all, failed to differentiate between the reason that something is disposed of, in this case, the reason that burning takes place, which is to get rid of it. It's not being burned to create some new product. The evidence was overwhelming that the primary, if not exclusive, reason it's being burned is to get rid of it. And the Court made the legal decision, in effect, that because there's some benefit to the – because there is some benefit to the farming operation, that they get rid of it for a reason. And the reason is the grass grows better, that that makes it not a solid waste. In this case, this is something which before the – this case was brought before the defendants knew it mattered, was routinely referred to as crop residue disposal. If – How do you deal with the legislative history? Let's assume – assume that the statute's ambiguous as to whether this is waste. Yes. I'll assume that for a minute, but I would like to know if there are any precedents like this. But assuming that you can characterize it as a waste in some way, the legislative history says agricultural wastes which are returned to the soil as fertilizers or soil conditioners are not considered discarded materials in the sense of this legislation. Yes. That seems to show a clear legislative intent that if farmers plow over waste or – it would seem to me that the intent of it would probably cover burning as well. It's not the kind of waste they're looking at. We think that that is dealing with totally different situations. If there were – if this was put in a mulch pile, if this was placed back on the soil, certainly. But what's happening here – Why do you say certainly? Because, I mean, there may be a difference in terms of the health hazard that it poses if somebody plows it under or if they burn it because of the hazards of smoke. But as to whether it's waste when, you know, the farmer has their operation and there's some stuff left laying on the ground, it seems to me it's either waste or it's not waste. Why would whether it's waste or not depend on whether you burned it or plowed it under? Well, because if, for example, we cited a case which dealt with manure from a hog facility where the district court said one issue would have to determine was whether or not it was, in fact, being used as fertilizer where there was so much manure that it was not capable of being used as fertilizer. In this case, the fertilizer part of this is a very small tail wagging an enormous dog. I mean, no one really – there's no evidence. The evidence is quite to the contrary, that the reason that they burn has nothing to do with fertilizer. The reason that they burn is if they don't get the grass off the field, the grass doesn't grow. Other methods are more expensive and may not work as well. And so they burn to get rid of the residue and get it off the field. The amount that returns to the field as fertilizer is just a very small percentage of it. The rest of it goes up in large plumes of smoke that go into surrounding areas and states, and we contend make people sick. That's not fertilizer. And to call it fertilizer just because some small piece of it winds up on the ground, we view this as sort of an after-the-fact justification as to why they're now burning. And I think no one would – and the growers haven't seriously contended – that they would burn just for the purpose of avoiding having to purchase additional fertilizers. What about the expert testimony that fields where burning occurred had a much longer life of productivity than fields where burning did not occur? Yes. And we submit that the reason for that, and that was a legal issue I referred to earlier, is precisely because if burning doesn't take place, if you don't remove the grass residue at all, then very little grass grows the following year because sunlight can't reach the plant. If you do it by burning, we agree that burning is the most effective way of getting rid of this waste. And so by doing it by burning, they get rid of much more of it than they can with other means. And while other means can be utilized and grass can still grow, the testimony there was just that this is the most effective method of removal, of disposal, and so therefore they get better yields the following year. They have longer crop rotations. It's all because they have to get rid of what the statute that authorizes them to do this calls crop residue disposal. And I – see, I'm down to two minutes. Before you stop, and obviously we'll give you time in rebuttal, but what is it that you want us to rule? I mean, what are you asking us to do? Are you asking us to say you allege sufficient facts to meet a motion to dismiss and the Court shouldn't have gone on to make these evidentiary hearings, in which case if we were to go your way, we would reverse the granting of the motion to dismiss, but you'd be in the exact same place because this judge would make the same findings and then come up to us as a summary judgment. So you're really asking us to review the evidence in this case? Yes, Your Honor. To review the evidence on this point, and also the Court made another ruling, which I haven't addressed, but it's addressed in our brief about the interrelationship of RCRA and the Clean Air Act, and to rule that. I don't think you need to spend time talking about that. I really don't. Okay. Well, then let me stop now and reserve whatever time I have for rebuttal. Thank you, Your Honor. Good morning, Your Honors. I'm Gary Vays, and I'm here with Peter Erblin, my co-counsel at trial. May it please the Court. This case is about a farming practice, as Your Honors have already noted. It's about a cycle of growth that's been used for centuries to stimulate plant growth. It kills diseases, increases production of the plants. The appellants seek to regulate this farming activity by using RCRA, notwithstanding the fact that the activity is directly subject to the regulation of the Clean Air Act. In addition, as we point out in our brief, every State has either a statute or a State implementation plan under the Clean Air Act that regulates agricultural burning. But the point is, as Your Honors have brought out this morning, is do we have a solid waste? That's what this Court addressed in the trial. Well, the district court – well, wait. Let's start. The procedural posture of the case unnecessarily complicates matters. With regard to the question you asked earlier, let me just read it. Yeah, well, yes. The judge said about the procedural posture. You start out with a complaint that alleges essentially all the elements of a RCRA claim. Yes. On the face of it, if you would file just a motion to dismiss against that complaint, I suspect it might have been dismissed or, you know, denied. Because they do make all the allegations, 1331, Federal questions, RCRA, all of that, subject matter jurisdiction, all the jurisdictional prerequisites are met. They then file a motion for preliminary injunction, and that's met with a motion to dismiss for failure to state a claim, as I understand it. I did two things. Filed an opposition to the request for a preliminary injunction, and then I filed a motion to dismiss. Failure to state a claim. Failure to state a claim. Now, theoretically, he could have decided that without taking any, any evidentiary testimony. Yes. But it seems to me he followed both Son v. Ernst in the Thornhill case and a recent case that just came out of the Ninth Circuit. I think it's the Savage case coming out of Arizona. I'll give you the cites a moment later. But Judge Lodge said after my closing or after the opening argument, keep in mind, this is the Court speaking, this is page 15 of the transcript. Thank you, counsel. Keep in mind, this is a motion for preliminary injunction and not a hearing on its merits, and a motion to dismiss. That's how he set the case up. So then, so then you, if you take that literally, then you'd want us to look at this just as a straight motion to dismiss, to forget the, forget all his factual findings, look at the complaint, and make it, and make a legal determination based upon the allegations in the complaint. In fact, it would appear. Yes. I'm sorry. I do want you to address Judge Piazza's question. I thought the standard rule is that if on a motion to dismiss a court takes evidence beyond the pleadings, then it's viewed by analogy to the summary judgment standards. Under Thornhill, what it says in the Thornhill case in White v. Lee, which is 227, 1214 on page 1242, when there is a proper 12B1 attack on the jurisdiction, it can be either facial, concerning or confining inquiries to the allegations in the complaint, or factual, permitting the court to look beyond the complaint. That's what Judge Lodge did in this case. He looked beyond the complaint. But he did two other things. When you look at what he applied as the applicable standard, he said he would assume that the facts were most favorable to the plaintiff. That's like reading the complaint. Well, it's almost like a motion for summary judgment. It's almost like a motion for summary judgment. I actually thought this should be treated as a motion for summary judgment. In fact, the Augustine case, which is a 1981 case, Ninth Circuit, it's 704, Fed 2nd, 1074. It says, and this is just the headnote I'm reading from, but in ruling on the jurisdictional motion involving factual issues which go to the merits, trial court should employ standards applicable to the motion for summary judgment. And as he did, just as you quoted earlier, he made a determination that there's no material fact in dispute here because all agree that this material is important for the growth process. And I do take that. Well, they dispute that, though. They dispute that. But certainly this circuit has said, and it seems to me Judge Lodge follows this language. The trial court should employ standards applicable to a motion for summary judgment as a resolution to the jurisdictional facts is a decision akin to the decision on the merits. Therefore, the moving party should prevail. Moving party meaning us. Only if material jurisdictional facts are not in dispute. Judge Lodge said there is one major material fact here not in dispute. That is, excuse me, I'm sorry. It's not in dispute that there's a value to farming practices of burning this residue. Let me ask you a question about the precedent. We know that the Solid Waste Disposal Act, or RCRA, was enacted aiming at landfills, sewage treatment plants, and that was a primary target. But we do have to look at the language, the language Congress used. And sometimes that goes beyond what their primary target was. So given the remedial purpose here, why can't the plaintiffs here claim that this residue is a waste and it's being disposed of? Because it is not discarded and a key component from the American Mining Congress case demonstrates that it has to be discarded. And you have a case out of the Ninth Circuit dealing with CERCLA, which talks about abandonment and the intent of abandonment. But the American Mining Congress case, 824 Fed 2nd, 1179, says that you have to have discarded material. It has to be garbage, refuse, or sludge from a waste treatment plant, and it has to be that or other discarded material. Why isn't the residue discarded material? They're not after the seed. More than that, Your Honor. If you go back and look at the testimony, and actually you can look at the testimony just of plaintiff's own witness. The learned counsel pointed out that the primary reason of getting rid of this material is just to burn it, to get rid of it. Not so. If you didn't have this material, you'd have to bring material in. You would have to have some burning. But just listen to their own expert or their own witness, Mr. Jacklin. Mr. Jacklin was asked about whether or not burning was the main or just getting rid of the residue was the main reason. He says that's only part of the answer. If you go to the excerpt of record on page 223 and in the transcript, this is page 218, the farmers burn for the primary purpose of photoinduction for increased seed yield. And he's asked, is that the primary purpose? Now, remember, he's not saying it's just to get rid of the material. He's saying it's for photoinduction to increase the yield. The reason you have fire around the bluegrass plant, like in your yards, you don't burn your bluegrass in your yard. So every year, if the sprig of grass comes up, it doesn't produce seed. Expert testimony points out that you have to have some fire to create. As Dr. Glenn Murray says, you have to create a microclimate around this plant. That is the primary purpose for having the fire. That's exactly what Mr. … Can you make that purpose by mechanical means? Dr. Murray? Let's say you have a machine that picked it all up and threw it away so the sun can get through to the plant right below the surface or whatever, and now the residue is gone, but it was disposed of by other than burning. Would you get that same benefit for the soil? The answer is no. You get it for about one to two years, and then you have to tear the plant out and start over. It will only produce for about one to two years. In fact, listen to what Dr. … I thought that was in dispute. I beg your pardon? I thought all that was in dispute. I thought all that was disputed. No, actually, Dr. Mines, based on cross-examination I conducted of him, said that it would be good for about two years. He had no experience over the four- and fifth-year period. Back to Her Honor's question about isn't there a longer period of time that this plant stays in if it's burned. That's what occurred. Mechanical removal. This is what Dr. Glenn Murray, who spent nine years studying Kentucky bluegrass, he's conducted 30 field trials. This is at ER 276. If you don't have mechanical removal, and this is ER 276 in your transcript 482, seed yields decline dramatically. He's asked the question about whether or not you could replace burning with mechanical removal. This is page 485 in the transcript. I don't believe that we can reliably replace open field burning with mechanical residue removal at that location. And he's talking about the Coeur d'Alene Indian Reservation and the Rathdrum Prairie. And this is what I was referring to a moment ago about the microclimate being asked about the fire. And, yeah, this is Dr. Glenn Murray, ER 278, trial transcript 489. Fire is an integral part associated with the microclimate around that plant that allows the plant to undergo the necessary processes for good seed production, i.e., this is not a solid waste that is contemplated by the statute of discarding it. In fact, the case I wanted to cite to you that comes out of the circuit here that talks about abandonment and discarding. It is A&W Smelter v. Clinton, 146, Fed 3rd, 1107, 9th Circuit, 1998. In this circle of cost recovery action, the 9th Circuit has discussed the concept of legal abandonment. The court in denying summary judgment says property is abandoned when the owner intends to divest himself of all interest in it. The record showed before Judge Lodge that these folks did not intend to discard, throw away as you do your garbage, your refuse, sludge, not in the same vein as RCRA was set up to organize. Just think about this. The logical outcome or plaintiff's argument is if residue from agricultural operations is solid waste, does that mean that the timber harvest that goes around in this part of the country, the residue, the sludge, the stumps and what have you constitute solid waste and all these timber fields are open dumps? Does it mean the vegetable harvesting that goes on in California, the residue that's left over from lettuce, cabbage growing, onion growing, what have you, is that solid waste? Are those fields open dumps? Is that what this statute was aimed at? I submit no. In fact, one of Your Honors read from the legislative history where it made clear. Congress was very much aware in 1976 when they passed this Act that there were. That's a different point. Go ahead. That's kind of a different issue. That is, here there is a residue that there is some treatment of. They handle this residue. If you just, you know, in California, in the San Joaquin Valley, if they just plow the fields and leave the lettuce. The root of the field. Then they just leave it there. They either plow it under or if they could create a solid waste out of it, if you piled it up or trucked it off and put it in a big pile. Here they're taking the residue of the stock, the grass, and cut. It's on the ground and they have to get rid of it. If they didn't have that material on the ground, they would have to bring material in to create the growth process. It's a cycle of growth. It's the cycle of life. I understand it can be somewhat disputed. Judge Lodge didn't think so after hearing 23 witnesses. That's a legal question for us to determine. It's solid waste. Is this? Because if you treat this as a summary judgment, that's it. We review day no vote. Day vote, no vote. Right. I mean, if it's a trial on the merits, then we review for clear air. But I would say. It's not a trial on the merits. And he made that pretty clear. But I would say Thornhill, Son, and Augustine suggest to you that if you have a 12B1 where you can go beyond the claim. Did you file a 12B1? I filed a motion to dismiss. Did you file a 12B1 or 12B6? I didn't specifically say 12B1. No, I did not. Well, that was a big difference. But that's the way it seems to me, Judge Lodge. I haven't looked at your motion to dismiss in a while, but I don't recall you saying that you were moving to dismiss for lack of subject matter jurisdiction. You were moving to dismiss for failure to state a claim. Failure to state a claim. In other words, that there were no possible set of facts that these plaintiffs could ever prove that would entitle them to relief. That's right. That's a pretty high standard, as we know, under 12B6. That's right. I thought that under Rule 12B1, I could be wrong in this, but I thought our precedent under Rule 12B1, which goes to subject matter jurisdiction, lets a court do some fact-finding outside of the complaint or outside of the pleadings. And I'm not sure it matters whether you said it's a 12B1 motion or a 12B6 motion. I think a court can make findings that relate to its jurisdiction under our precedent. Yes. I would be incorrect about that, but that's what I thought. I think that's what Augustine says. What he did is he went outside the complaint. And then instead of de novo, Your Honor, I would suggest it switches over to a clearly erroneous standard, just as we said in our brief. Did he clearly, erroneously decide that this was not a solid waste? Did he clearly decide this was not discarded? At that point, it switches, I think, to clearly erroneous. But he had the ability to look at, after two and a quarter days of trial and argument, that this he could go, as Augustine suggests, as the son suggests, to look at the facts as to whether or not what he was talking about was jurisdictional. Solid waste is jurisdictional. That's not jurisdictional. That goes to the merits. That goes to whether or not you have a claim for relief. No. I mean, it's different. If this were a we used to do 12b-1 factual hearings and make factual findings on 12b-1 motions when there was a like a personal jurisdictional matter. Sure. Had the person come to the State of California to conduct business. No, no, no. I didn't come to the State of California. I was there for a vacation or something. And we'd have to conduct an evidentiary hearing to determine whether or not the fellow was in California for purposes of conducting business related to the claim that was being litigated. And I would have to make factual findings that would then supplement what was alleged in the complaint. And then I could make a jurisdictional ruling at that time. Here, it looks like he's going to the merits. I look at this as going to the merits of the claim, which is different, in my view, than simply a jurisdictional, you know, fact. I mean, if we were talking about exhaustion of administrative remedies or notice requirements or something like that, I might feel differently. But my sense is this goes to the merits. Well, getting beyond this, because we're going to have to sort that out, here's what I see. I think this case is a very close case. And I am very sympathetic to the health hazards of burning, having just lived through the fires in southern California and suffering those effects and the impact of all of that. Reading this case at that time was quite interesting. But to me, the problem and the reason I find this case very close is that you can take each of these, each of the pieces of key language in the statute, you know, solid waste. Is it disposed? Is it handled? Is it treated? If you take the simple dictionary definitions of those words, you can find that this fits with the actions of the growers in burning the leftover parts of the plants, fits technically into that, into the language, not using Black's dictionary, just using straight Webster's dictionary definitions. That then you get into both, and that's saying this stuff is unambiguous, the language is unambiguous, but then you get back into how case law has treated it and how the legislative history has treated it. And that's, I haven't heard argument about that. I mean, we haven't heard argument today about whether it's the residue has served its intended use or whether it is a recyclable material. And I'd like to hear a little bit about that and why just applying straightforward dictionary definitions, the growers don't lose. The growers do not lose because the material to be a solid waste must be discarded. It must be abandoned. That's what the statute says. It has to be solid waste is discarded. And American Mining Congress has looked at what discarded means. And it says on page 824, Fed 2nd, 1193, Congress clearly and unambiguously expressed its intent that solid waste and therefore EPA's regulatory authority be limited to materials that are discarded, discarded by virtue of being disposed, abandoned, or thrown away. I asked the question of these individuals, what would happen if you would come on, if someone would come onto your property and try to take this off of your property? And the answer was we would consider, one, trespass, and two, basically stealing our property. They need this material. It is not abandoned. It's not discarded. And to address your point about the clean air issue, and that is a considerable concern to everyone. Farmers are good people. They do not want to harm their neighbors. But just don't forget that you have a very complicated, and as all of you know who live in California, a very strong Clean Air Act. And, in fact, if EPA and if the State of Idaho felt that these episodic burns were causing public health problems, I suggest that you read from the Federal Register Notice of July 18, 1997, the rules and regulations on page 38,673, third column. EPA believes it is unlikely that there will be health effects if the following occurs, if such episodic events did occur, talking about burn and putting smoke or particulate matter into the air. The Act provides for emergency State or Federal action to address them and view the limits on truly episodic peak concentrations, like what you've been having with forest fires down in Southern California. EPA believes that an appropriate selected 24-hour standard with a concentration-based limit can provide stable and adequately protective supplement to the annual standard in areas with periodic peak concentrations. The State and the Federal Government have the opportunity to come in and take emergency action if they think there is an imminent and substantial endangerment, as my colleague argues. EPA and the State have not determined that his facts, his clients' facts, rise to an imminent and substantial endangerment. They believe that the Clean Air Act fully protects public health. And there's, as you may be aware, been a huge amount of litigation over the particulate standard and whether it's strong enough. And it's now in place. And there was testimony that we never violated the 24-hour standard, which is 65 micrograms per cubic meter. And you've probably been having 100 to 200 micrograms in your area. But public health was not harmed by these farmers burning. But they have not discarded. That's the key, the statutory language. It's not solid waste. It's not something like you think of taking your garbage out and putting out, saying, I've abandoned this. You haven't. You don't abandon this straw and stubble that's left on your feet. I see my time is up. Thank you very much. Thank you very much, counsel. Mr. Gross, can I just ask you, what additional evidence would you put in if this case were to go back? Yes, Your Honor. I think one issue in which there is, I think, clear disagreement that's come out before in this argument is the point that Mr. Bates just made, that if they didn't have this, they would have to bring this in. We think that is absolutely not true. In the testimony of Mr. Chaplin, he was asked, why is removal so important and why is burning so effective? The reason that burning is more effective and that, he says, is nothing as good as burning, is because burning gets rid of more of it than mechanical means do. If this is rocky soil, if they bring in mechanical means, they can't crew cut the stubble that's there. They can't get every last bit of it out. And the best condition is to get every last bit of it out. That's what this is about, getting every last bit of the grass that they grow and then they don't need anymore because they're only selling seed and they've got to get rid of the grass or things will not burn. But if it has an effective, if it has an impact on the soil, if you get all of it out versus getting some of it out mechanically, then it doesn't indicate there's a value to it in the sense of a farming operation. There's a value to getting rid of it. We submit that there's a value to getting rid of it and that's what creates the value. If you're saying that mechanical doesn't get rid of it, get rid of stubble and straw as effectively as burning, then mechanical means aren't going to extend the life of the soil and the crop yields in the same way. This is not to say it shouldn't be regulated or if it creates a health hazard, something done about it. But in terms of our precedent as to whether it has value or it's discarded. We cited many cases for the proposition that value was not the determining factor of whether something is discarded or not. Discarded or abandoned. Discarded or abandoned. And I would like to, we provided a notice of citation of an EPA Federal Register notice from just last week. Mr. Bays referred to the American mining case and other cases are referred to throughout his briefs that deal with the definition of solid waste in the context of hazardous waste. And in that context, the policy is if you call something a solid waste and it's subject to regulation and it imposes a regulatory burden. But EPA in the Federal Register notice issued last week, which is a response to those decisions, first reiterates that all of those cases only deal with the definition of solid waste for purpose of whether something is a hazardous waste. EPA reiterates that in the context of imminent substantial endangerment, where the policy considerations are very different, where if, where the statute needs to be applied broadly precisely because otherwise, the court doesn't even get to consider whether there is an endangerment to public health. If we're dealing with a landfill or a treatment, you know, garbage treatment plant, the remedial purpose of the statute would make us interpret liberally. But the question is here whether it is even under this act at all. Let me ask you this in terms of precedent because it is an important case and it is a difficult case for the reasons Judge Wardlaw mentioned and some of the reasons that have been urged by the parties here in the health hazards. Are there cases, the cases I looked at in the brief seem generally to involve a site specific disposal of some kind of waste, you know, a plant, a landfill, some place where waste was treated. Now, are there any precedents anywhere in any circuit where agricultural wastes have been held to be solid wastes under any circumstance for any crop? That's my question. Okay. You got the question in mind? Yes. Is there any precedent that says that? You know, the only, I mean, we cited and I can get in our brief this Smithfield food case where the court denied a motion to dismiss, saying the question whether something was a solid waste was a factual issue in terms of whether the manure there. My question, I just want to make sure I understand this. Is there any precedent anywhere in the country, circuit court, district court, any federal court that has said that any agricultural waste from any crop is a solid waste that invokes RCRA? I'm not aware of precedent one way or the other interpreting the provision that, interpreting that provision. You're saying there's no precedent against it that forecloses it, but there's no precedent for it. Correct. Is that fair? Yes, Your Honor. But the last point I wanted to make from this EPA Federal Register notice, 68 Federal Register 61558 from just last week, is, again, EPA interpreting solid, the definition of solid waste. It says, EPA notes that it continues to regard any material intended for recycling that escapes into the environment as discarded, and therefore within its statutory jurisdiction. And what's very different here is that the recycling cases are all within a closed environment, continuing to use the same material as is subject to regulation. Here, there is activity that takes place that, even if you view it as somehow recycling, certainly goes into the environment and You might argue that part of the elements are recycled, but the particulate pieces that head off in the sky as smoke aren't recycled. That's absolutely correct. I agree that there's Your own witness has testified that there was at least a photoinduction value to a part that doesn't fly off into the air in the form of smoke. So our position is that the photoinduction value is, and we think the record on this, I mean, without belaboring it, but that the photoinduction effect comes because it lets sunlight reach the plant. And sunlight reaches the plant because the grass that's grown, which is not what they're trying to sell, they're trying to sell the seed, has to be gotten rid of. So the photoinduction effect comes from getting rid of it. If they could get rid of it by fruit-cutting the field, which is hard to do in these fields, then they would have the same, our witnesses would say they would have the same photoinduction effect. Our witnesses also testified that the thought that had been viewed for many years that you needed burning to shock the seed, to create growth, has been disproved by all of the evidence. And really all it comes down to, and I know this is, and maybe this just indicates that there is a factual issue requiring further consideration under a properly articulated standard, but that all of the evidence is that the reason for burning is to get rid of the crop, to get rid of the residue, what they've grown and no longer need, and everything else is incidental. And part of what they benefit by getting rid of the residue is the photoinduction effect. I thought you were saying that by burning it clears away the residue more effectively than cutting wood, because you can't crew-cut it mechanically. And so there is a farming benefit to burning it. Yes, we don't disagree. It's better for the farmers. It has value to them. Right. But the point there would be that anyone who disposes of waste, a farmer, someone who operates a factory, they always do it because there's a benefit to them in doing it. We don't dispute there's a benefit to them in doing it. We just admit that the benefit comes from the fact that they've grown a crop, they've harvested a part of it, and they don't need the rest, and they've got to get rid of it or they can't continue to utilize the land. I don't agree with that legislative history that I read earlier, which at first blush appears to suggest that Congress, whatever else they had in mind, did not have agricultural waste in their sites. Well, the definition of solid waste is discarded material, including from agricultural operations. But what I meant was they didn't have agricultural waste that's somehow linked to the farming operations themselves. We don't – I don't think that that's what Congress was saying. I think they were – you know, this is a case where this is not part of the farming operations. It's not something just done on the farm. These are plumes that go into Canada and to Washington and to Montana. These are – this is – if they kept it on their farm, we wouldn't be here. If they made this into fertilizer, the part of it that becomes fertilizer, if in fact that's true, and we dispute that as well, we dispute that there's a fertilizer benefit, and our experts said that that was far from clear, that could well be fertilizer. But the vast bulk of it that goes up in billowing clouds of smoke and make people sick, I mean, that's not fertilizer. That's pollution. And that's harmful pollution from their need to get rid of the solid waste. All right. Counsel, thank you. You've gone well over your time. Thank you, Your Honor. And thank you for a fine argument. Safe air for everyone v. Meyer is submitted. The court will be in recess for approximately 10 minutes. And I would just like to admonish people that if you're going to have conversations in the courtroom, please go outside because they are distracting when we're trying to listen to oral argument. Thank you. All right. The court will now be in recess for 10 minutes. Thank you. Thank you.
judges: Wardlaw, Noonan, Paez